UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Shawn Stayrook

   v.                                            Civil No. 11-cv-426-SM

Sgt. Masse et al.[1]

### REPORT AND RECOMMENDATION

Shawn Stayrook has filed a complaint (doc. no. 1), an addendum to the complaint (doc. no. 8), and a motion to amend the complaint (doc. no. 9).[2] Stayrook files this action, pursuant to 42 U.S.C. § 1983 and state law, alleging violations of his rights that occurred during two weeks he spent incarcerated in the Reception Unit ("RU") at the Northern New Hampshire Correctional Facility ("NCF") in 2011. Because Stayrook is a prisoner, the matter is before the court for preliminary review to determine whether, among other things, the complaint states any claim upon which relief might be granted.

---

[1] In addition to Sgt. Masse, Stayrook names New Hampshire Department of Corrections Commissioner William Wrenn, Acting Warden of the Northern New Hampshire Correctional Facility Christopher Kench, and Capt. Lambertson. Stayrook sues each defendant in his individual and official capacity.

[2] The motion to amend the complaint (doc. no. 9) has been granted. The court considers the complaint in this action to consist of the original complaint (doc. no. 1) and the addenda thereto (doc. nos. 8 and 9) for all purposes.

See 28 U.S.C. § 1915A(a); United States District Court District of New Hampshire Local Rule ("LR") 4.3(d)(2).

## Standard of Review

Under LR 4.3(d)(2), when an incarcerated plaintiff commences an action pro se, the magistrate judge conducts a preliminary review.  The magistrate judge may issue a report and recommendation after the initial review, recommending that the complaint be dismissed, if the court lacks subject matter jurisdiction, the defendant is immune from the relief sought, the complaint fails to state a claim upon which relief may be granted, the allegation of poverty is untrue, or the action is frivolous or malicious.  See LR 4.3(d)(2) (citing 28 U.S.C. § 1915A and Fed. R. Civ. P. 12(b)(1)).  In conducting a preliminary review, the magistrate judge construes pro se pleadings liberally, to avoid inappropriately stringent rules and unnecessary dismissals.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

To determine if the complaint states any claim upon which relief could be granted, the court applies a standard analogous to that used in reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6).  The court decides whether the complaint contains sufficient factual matter, accepted as true, to state a

claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).

To make this determination, the court employs a two-pronged approach. See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The court first screens the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Ocasio-Hernández, 640 F.3d at 12 (citations, internal quotation marks and alterations omitted). The second part of the test requires the court to treat as true all non-conclusory factual allegations, even if "seemingly incredible," and to consider those allegations along with all reasonable inferences drawn therefrom, construed in plaintiff's favor, in determining if the claim is plausible. Id. The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007). The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief." Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in

the complaint are true (even if doubtful in fact)." (internal citations and footnote omitted)).

Evaluating the plausibility of a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950 (citation omitted). In doing so, the court may not disregard properly pleaded factual allegations or "attempt to forecast a plaintiff's likelihood of success on the merits." Ocasio-Hernández, 640 F.3d at 13. "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." Id.

**Background**

On May 29, 2011, Stayrook, then a pretrial detainee being held at NCF, was transferred into Pending Administrative Review ("PAR") status, pending completion of an investigation into Stayrook's request for protective custody. Because he was in PAR status, NCF officials housed Stayrook in the RU.

Stayrook alleges that PAR inmates in RU are entitled to at least one hour of outside yard time every other day, subject to limitations based on security or staffing issues. Stayrook states that when he was given an hour of out-of-cell time, it

was diminished by prison officials requiring him to use half of the time to shower and use the phone.  Stayrook states that he was not given access to outside yard time or dayroom time for the two weeks he was in RU, and had to spend the out-of-cell time he was given in a "dry tank."  A "dry tank" is a cell without a toilet, a bunk, or any furniture, typically used to house inmates who need to "cool down" for two hours at a time.

Stayrook complained about the lack of out-of-cell time to the RU supervising officer, Sgt. Masse.  Masse advised Stayrook that he was not given outside yard time due to safety concerns stemming from Stayrook's request for protective custody.

Stayrook further alleges that all RU inmates: are not permitted to use the law library or recreational library; are allowed to order only a very limited number of items from the canteen; are denied sufficient access to cell-cleaning supplies; receive no fruit; and are not permitted any religious study, services, or counseling.  Further, Stayrook alleges that all RU inmates are denied adequate medical care because they must access sick call by advising an officer that they would like to attend sick call, and that the involvement of officers in the process grants them the ability to interfere with inmates' receipt of medical care.

Stayrook further asserts that, pursuant to prison policy, hearings on major disciplinary violations and classification issues are supposed to be conducted by a prison lieutenant, or by an officer designated by such an official.  Stayrook states Major Cox designated Sgt. Masse to conduct those hearings. Stayrook states that Cox resigned and is no longer employed at the prison, but Masse continued to conduct those hearings.

### The Claims[3]

In his complaint (doc. nos. 1, 8 and 9), Stayrook asserts the following claims:

    1.   Inmates in RU have been denied adequate out-of-cell, outside yard, and dayroom time, in violation of: (a) the consent decree issued in Laaman v. Helgemoe, No. 75-cv-258-PB (D.N.H.) ("Laaman Consent Decree"); (b) the Eighth and Fourteenth Amendments; (c) prison policy; and (d) state law.

    2.   Inmates in RU are not permitted adequate access to the NCF law library, in violation of: (a) the Laaman Consent Decree; (b) the First and Fourteenth Amendments; (c) prison policy; and (d) state law.

---

[3] The claims as identified herein will be considered to be the claims raised in the complaint (doc. nos. 1, 8 and 9) for all purposes. If Stayrook disagrees with the claims as identified, he must do so by properly objecting to this report and recommendation or moving to amend his complaint.

3. Inmates in RU are not permitted to use the NCF recreation library, in violation of: (a) the Laaman Consent Decree; (b) the First and Fourteenth Amendments; (c) prison policy; and (d) state law;

4. RU inmates' access to canteen is unduly restrictive, in violation of: (a) the Laaman Consent Decree; (b) the Eighth and Fourteenth Amendments; (c) prison policy; and (d) state law.

5. RU inmates are not allowed adequate access to medical care because they must request sick call through a security officer, in violation of: (a) the Laaman Consent Decree; (b) the Eighth and Fourteenth Amendments; (c) prison policy; and (d) state law.

6. RU inmates are denied fruit, or an adequate substitute therefore, in violation of: (a) the Laaman Consent Decree; (b) the Eighth and Fourteenth Amendments; (c) prison policy; and (d) state law.

7. RU inmates are not given adequate cell-cleaning supplies, in violation of: (a) the Laaman Consent Decree; (b) the Eighth and Fourteenth Amendments; (c) prison policy; and (d) state law.

8. RU inmates are not given any opportunity to attend religious services or receive religious counseling, in violation

of: (a) the Laaman Consent Decree; (b) the First and Fourteenth Amendments; (c) prison policy; and (d) state law.

9. Sgt. Masse is improperly conducting major disciplinary and classification hearings at NCF in violation of: (a) the Fourteenth Amendment; and (b) prison policy.

## Discussion

I. Claims Asserted Under the Laaman Consent Decree

Stayrook asserts that the challenged conditions of his confinement violate the prison's obligations established by the Laaman Consent Decree. The Laaman Consent Decree was originally issued in 1978 and modified in 1990 in Laaman v. Helgemoe, Civ. No. 75-cv-258 (D.N.H. filed Aug. 29, 1975), a class action lawsuit filed in this court challenging conditions of confinement at the New Hampshire State Prison.

On July 6, 2001, this court approved a settlement agreement (doc. no. 523) ("Settlement Agreement") and stipulation of dismissal in the Laaman case. See id. (order issued July 6, 2001). That order terminated federal court jurisdiction over the matter, and provided that the 1990 consent decree, as modified by the Settlement Agreement, would constitute a final settlement agreement that would thereafter be enforceable in the state courts of New Hampshire. Id. Because federal

jurisdiction over that case ended with an order directing that future challenges be brought in state court, this court lacks jurisdiction over Stayrook's claims based on violations of the Laaman Consent Decree. Cf. Dupont v. Dubois, 99 F.3d 1128, 1996 WL 649340, *1 (1st Cir. 1996) (unpublished table decision) (order seeking to enforce federal or state court consent decree is unavailable in action under 42 U.S.C. § 1983). Accordingly, Stayrook's claims asserting violations of the Laaman Consent Decree should be dismissed without prejudice to his pursuing an action in state court.

II. Standing

The Constitution permits federal courts to resolve cases only where plaintiff seeks resolution of a "case" or "controversy" in which he or she holds a personal stake. See Katz v. Pershing, LLC, ___ F.3d ___, No. 11-1983, 2012 WL 612793, *3 (1st Cir. Feb. 28, 2012) (citing U.S. Const. art. III, § 2, cl. 1). To establish standing, a plaintiff must satisfy each of three elements: (1) injury in fact; (2) causation; and (3) redressability, along with satisfying the "prudential dimensions" of standing recognized in the federal courts. See Katz, 2012 WL 612793, at *3-4 .

> Along with the trio of constitutional elements
> prescribed by Article III, standing also has

>prudential dimensions. These components ordinarily require a plaintiff to show that his claim is premised on his own legal rights (as opposed to those of a third party), that his claim is not merely a generalized grievance, and that it falls within the zone of interests protected by the law invoked.

Id. at *4 (internal quotation marks and citation omitted).

"Injury in fact," for standing purposes, means that "[p]laintiff must have personally suffered some harm. The requirement of an actual or imminent injury ensures that the harm has either happened or is sufficiently threatening; it is not enough that the harm might occur at some future time." Id. at *3 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Accordingly, to properly assert civil rights claims challenging the conditions of his confinement in NCF, Stayrook must allege more than generalized grievances about conditions in the RU that may, at some time in the future, cause injury or harm to RU inmates. See Katz, 2012 WL 612793, at *3.

In Stayrook's complaint, the allegations concerning access to the law and recreation libraries, a limited canteen selection, access to sick call, access to religious services, and improper handling of disciplinary and classification hearings, allege only general deficiencies in the conditions in RU. Stayrook does not allege, as to those claims, that during the two weeks he spent in RU, he ever personally needed, sought,

or was harmed by the deprivation of library access, canteen items, medical care, or religious services.  Stayrook's claims are in the nature of generalized grievances asserted on behalf of all RU inmates.  Because Stayrook has not established that he has standing to assert such generalized grievances, those claims should be dismissed.

III. Conditions of Confinement Claims

    A.    Section 1983

A government official may be held personally liable under 42 U.S.C. § 1983 if, acting under color of state law, the official caused the deprivation of a federal constitutional or statutory right.  Section 1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 40-41 (1st Cir. 2009) ("Section 1983 requires three elements for liability: deprivation of a right, a causal connection between the actor and the deprivation, and state action.").  To the

extent that Stayrook asserts claims alleging that individuals acting under color of state law have violated his rights under federal law, his claims arise under § 1983.

    B.   <u>Out-of-Cell Time</u>

Stayrook alleges that his Fourteenth Amendment rights were violated when he was denied sufficient outside yard and out-of-cell time. The Fourteenth Amendment's Due Process Clause guarantees a pretrial inmate protection from conditions of confinement that amount to punishment for the charged offense. <u>See</u> <u>Mosher v. Nelson</u>, 589 F.3d 488, 493 n. 3 (1st Cir. 2009) (pretrial detainee's conditions of confinement claims must be analyzed under Fourteenth Amendment); <u>Surprenant v. Rivas</u>, 424 F.3d 5, 13 (1st Cir. 2005).

Where a prisoner alleges that a prison regulation interferes with his constitutionally protected right, such as his right not to be housed in punitive or unduly restrictive conditions, the policy is only valid if it is "reasonably related to legitimate penological interests." <u>See</u> <u>Turner v. Safley</u>, 482 U.S. 78, 89 (1987). To determine the constitutionality of a regulation, the court considers four factors: (1) whether the regulation has a "valid, rational connection" to a legitimate penological objective; (2) "whether

alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are 'ready alternatives' to the regulation." Overton v. Bazzetta, 539 U.S. 126, 132 (2003) (citing Turner, 482 U.S. at 89-91).

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however. Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. . . . And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into "punishment."

Bell v. Wolfish, 441 U.S. 520, 536 (1979).

For pretrial detainees, punishment for the inmate's underlying criminal charge is never a legitimate purpose for a prison regulation. See Surprenant, 424 F.3d at 13. "If a restriction appears to be unrelated to a legitimate governmental objective, and is, for example, arbitrary or purposeless, then a court may infer that it is intended to be punishment." Lyons v. Powell, 838 F.2d 28, 29 (1st Cir. 1988); see Ford v. Clarke, 746 F. Supp. 2d 273, 289-90 (D. Mass. 2010) (detention of pretrial detainee in a disciplinary housing unit for purpose of

punishment, rather than for legitimate governmental purpose, violated Fourteenth Amendment).

Here, Sgt. Masse's explanation for the denial of Stayrook's outside yard time was that NCF officials had institutional concerns for Stayrook's safety. The security of inmates who identify threats to their own safety is indisputably a reasonable penological objective. Nothing in the complaint indicates that Stayrook was denied out-of-cell time for any punitive reason, or that any alternative was readily available that would have allowed Stayrook more out-of-cell or outside yard time, without implicating the prison's security concerns. Accordingly, the court finds that Stayrook has failed to state any claim that his constitutional rights were violated by the prison's restrictions on his out-of-cell time.[4]

C. Fruit

Stayrook alleges that he was denied fruit, or an adequate substitute therefor, in his meals during the two weeks he spent

---

[4] Because the court finds that limits on Stayrook's out-of-cell time were imposed for a valid penological purpose, it need not decide whether the same restrictions, imposed punitively, would constitute more than a "de minimis" imposition on Stayrook's due process rights. See Bell, 441 U.S. at 539 n.21 ("'There is, of course, a de minimis level of imposition with which the Constitution is not concerned.'" (quoting Ingraham v. Wright, 430 U.S. 651, 674 (1977))).

14

at RU.  Stayrook claims that the denial of fruit violated his Fourteenth Amendment due process right to nonpunitive conditions of confinement.  See Mosher, 589 F.3d at 493 n.3; Surprenant, 424 F.3d at 15.

In the Eighth Amendment context, prisons must provide convicted inmates with "nutritionally adequate food."  See Querido v. Wall, No. 10-098 ML, 2010 WL 5558915, *5 (D.R.I. Dec. 8, 2010), report and recommendation adopted, 2011 WL 63503, *1 (Jan. 7, 2011).  The same requirement applies in the Fourteenth Amendment context, as jailers have no less onerous an obligation to provide appropriate nutrition to pretrial detainees than they do to convicted inmates.  Cf. Leavitt v. Corr. Med. Servs., Inc., 645 F.3d 484, 497 n. 21 (1st Cir. 2011) (Eighth Amendment standard for evaluating prison medical care claims is same as Fourteenth Amendment standard for evaluating pretrial detention medical care claims).

Without specific information detailing "how the food provided is nutritionally inadequate" or describing actual adverse health effects from the asserted deprivation, a complaint does "not plead adequate facts to move [a] claim of constitutionally inadequate food 'across the line from conceivable to plausible.'"  Querido, 2010 WL 5558915 at *5 (quoting Iqbal, 129 S.Ct. at 1951).  Stayrook asserts no

15

specific facts identifying how two weeks without fruit denied him a nutritionally adequate diet or adversely impacted his health. Because Stayrook does not state any facts to support a plausible claim that he was denied adequate nutrition in the RU, he has failed to state a claim upon which relief might be granted based on the denial of fruit.

### D. Cleaning Supplies

Stayrook states that he was only allowed to clean his cell in RU once during the two weeks he spent there, and that the cleaning products he received were limited. Stayrook asserts that he is entitled to access to cleaning supplies under prison policy and the Fourteenth Amendment.

Nothing in Stayrook's pleadings gives rise to any reasonable inference that the limitations on cleaning supplies in the RU were designed to be punitive. Further, Stayrook has not alleged that the limitations caused his cell to become so unsanitary that there was any risk to his health or safety, or that the condition of his cell injured him or posed any risk of injury to him in any way. Accordingly, Stayrook has failed to state facts sufficient to support a claim that a lack of cleaning supplies amounted to a violation of his constitutional rights.

IV. <u>Violation of Prison Policies</u>

Stayrook alleges that his due process rights were violated by prison officials' failure to follow prison policies concerning the conditions and practices employed in RU. An inmate has no constitutional right to have jail officials follow jail policies if the officials' actions are otherwise constitutional. <u>See</u> <u>Querido</u>, 2010 WL 5558915 at *3. For the reasons explained in this report and recommendation, the court finds that Stayrook has not alleged any violation of his constitutional rights. Thus, Stayrook's claims based on the failure of prison officials to follow their own procedures are not cognizable in this action and should be dismissed.

V. <u>State Law Claims</u>

Stayrook requests that this court exercise its supplemental jurisdiction over any state law claim that might arise out of the operative facts he has alleged in his complaint, pursuant to 28 U.S.C. § 1367. This court may exercise its supplemental jurisdiction over state law claims that arise out of the same case or controversy as federal claims properly before it. <u>See</u> 28 U.S.C. § 1367(a). The court may decline to exercise supplemental jurisdiction where the claims over which the court

has original jurisdiction have been dismissed. Id.
§ 1367(c)(3). In light of the court's recommendation that all of the federal law claims in this action be dismissed, the court should decline to exercise supplemental jurisdiction over any state law claim that Stayrook intended to assert in this action, and should dismiss such claims without prejudice to plaintiff raising those claims in a court of appropriate jurisdiction.

### Conclusion

For the foregoing reasons, the court recommends that all of the claims for relief asserted in the complaint be dismissed. The federal claims should be dismissed with prejudice. Stayrook's claims asserting violations of the Laaman Consent Decree, and any state law claims that Stayrook intended to assert here, should be dismissed without prejudice to Stayrook filing an action asserting such claims in state court.

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 181 L. Ed. 2d 268 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st

Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                              _____
                                                              Landya McCafferty
                                                              United States Magistrate Judge

March 19, 2012

cc:   Shawn Stayrook, pro se

LBM:jba