UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Shawn Stayrook

    v.                                                Civil No. 11-cv-426-SM

Sgt. Masse et al.


**REPORT AND RECOMMENDATION**

Before the court is a motion to amend the complaint (doc. no. 15) filed by pro se plaintiff, Shawn Stayrook. This court previously issued a report and recommendation following a preliminary review of Stayrook's original complaint and the addenda thereto (doc. nos. 1, 8 and 9), recommending that this action be dismissed in its entirety. See Report and Recommendation (Mar. 19, 2012) (doc. no. 13). The motion to amend the complaint (doc. no. 15), seeks to fortify the claims that the court previously deemed insufficient to proceed. For the reasons stated below, the court recommends that the motion to amend (doc. no. 15) be denied as futile.

**Background**

In the original complaint and the addenda thereto (doc. nos. 1, 8 and 9), Stayrook claimed that prison officials had violated his rights, and he asserted that defendants were liable

to him pursuant to 42 U.S.C. § 1983, state law, and a consent decree entered in a lawsuit involving prison conditions in Concord, New Hampshire. Stayrook's complaint also contained claims alleging violations of rights that Stayrook asserted accrued to him under New Hampshire Department of Corrections ("DOC") policies and regulations. On March 19, 2012, the court issued a report and recommendation (doc. no. 13), recommending that the complaint be dismissed in its entirety for failing to state any claim upon which relief might be granted. Stayrook filed the instant motion to amend his complaint (doc. no. 15) in response to that Report and Recommendation (doc. no. 13).

**Discussion**

I.   Motions to Amend

Fed. R. Civ. P. 15(a) allows a pleading to be amended once as a matter of course within twenty-one days after service of the pleading or, if the pleading requires a response, within twenty-one days after service of a responsive pleading. See Fed. R. Civ. P. 15(a)(1). In other circumstances, a party may amend its pleading with the court's leave, which the court "should freely give [] when justice so requires." See Fed. R. Civ. P. 15(a)(2).

The court has discretion to deny a motion to amend "'for any adequate reason apparent from the record.'"  See Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007) (quoting Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994)).  "Futility of the amendment constitutes an adequate reason to deny the motion to amend."  Todisco, 497 F.3d at 98 (citing Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006)).  In evaluating whether a proposed amendment to the complaint is futile, the court applies the standard applied to motions to dismiss under Fed. R. Civ. P. 12(b)(6).  See Adorno, 443 F.3d at 126.  Accordingly, this court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," while "isolat[ing] and ignor[ing] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements."  Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citing Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011)); see also Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

II. Conditions of Confinement

Stayrook, while a pretrial detainee, was housed at the Northern New Hampshire Correctional Facility ("NCF"), in the Reception Unit ("RU"), for two weeks beginning May 29, 2011. Stayrook was placed in the RU pending consideration of his request for protective custody status. Stayrook asserts that it was inappropriate for jail officials to house him in the RU, because it is inappropriately restrictive for a pretrial inmate seeking protective custody. Specifically, Stayrook alleges that during his two-week confinement at RU: he was improperly denied out-of-cell exercise and outside yard time; he was denied access to sunlight for twenty-three hours per day; he was made to live and eat in an unsanitary cell despite recently having recovered from a life-threatening infection; and he was denied fruit.

In his motion to amend (doc. no. 15), Stayrook has added certain details to his claims concerning these conditions of confinement.[1] Specifically, Stayrook now states: there were no windows in Stayrook's cell in the RU, and he was thus deprived of sunlight for twenty-three hours a day for two weeks; he was denied fruit and cleaning supplies although he had recently recovered from a life-threatening cellulitis infection, and the

---

[1] The court does not restate the allegations in the initial complaint. Those allegations are recounted in the court's March 19 report and recommendation (doc. no. 13).

4

lack of both a wholesome diet caused by the denial of fruit and cleaning products posed a risk of reinfection; and a fire suppression device in the ceiling of Stayrook's RU cell leaked throughout Stayrook's stay in the RU.

A pretrial detainee claiming that he has been subjected to unconstitutional conditions of confinement, in violation of the Fourteenth Amendment, must demonstrate, first that "from an objective standpoint, the conditions of his confinement deny him the minimal measure of necessities required for civilized living."  Surprenant v. Rivas, 424 F.3d 5, 18 (1st Cir. 2005) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  Second, the plaintiff must demonstrate that "from a subjective standpoint, the defendant was deliberately indifferent to inmate health or safety."  Surprenant, 424 F.3d at 18-19 (citing Farmer, 511 U.S. at 836-37).

Stayrook has alleged subjection to uncomfortable and stressful prison conditions.  However, those conditions, which were imposed for only two weeks are not sufficiently serious to state a claim that Stayrook was denied any of the necessities of civilized life.

Even if the court were to assume, for the sake of argument, that the alleged conditions did constitute a deprivation of such necessities, Stayrook has failed to assert facts to demonstrate

5

satisfaction of the second prong of a Fourteenth Amendment claim. Stayrook has not alleged that any responsible prison official was actually aware of any significant risk to Stayrook's health or safety, arising from Stayrook's previous infection or otherwise, and disregarded or otherwise failed to protect Stayrook from that risk. Accordingly, Stayrook's motion to amend fails to allege facts to demonstrate that the conditions of his confinement in the RU were unconstitutional.

III. Retaliation

Stayrook filed grievances with the prison complaining of the conditions of his confinement, in particular, the lack of out-of-cell and outdoor exercise time. In his initial complaint, Stayrook included Masse's written response explaining that Stayrook's out-of-cell and outside yard time were restricted as a result of concerns for Stayrook's safety, as Stayrook had requested protective custody status. In the March 19 report and recommendation (doc. no. 13), the court found that Stayrook's safety was a legitimate penological objective underlying the short-term restriction on Stayrook's out-of-cell time. The court deemed the restriction rationally related to the security concern, and therefore constitutional. See Turner

v. Safley, 482 U.S. 78, 89 (1987) (prison regulation valid if it is "reasonably related to legitimate penological interests").

Stayrook now asserts that, in fact, he was denied out-of-cell and outdoor time punitively and arbitrarily, and that the denial was effected by Masse in retaliation for grievances Stayrook filed against Masse concerning Masse's authority to conduct certain hearings at NCF.  Stayrook does not allege any facts, other than his own conclusions, that indicate that the denial of out-of-cell and outside yard time was retaliatory, arbitrary, or punitive in nature.  To the contrary, as the court has previously noted, the facts submitted by Stayrook support the conclusion that Masse denied Stayrook out-of-cell exercise and outside yard time pursuant to a legitimate security objective.  Nothing in Stayrook's motion to amend contravenes the court's prior findings.  Stayrook has thus failed to state a plausible claim for relief based on retaliation.  See Iqbal, 556 U.S. at 678 (complaint must assert facts sufficient to "state a claim to relief that is plausible on its face" (internal quotations and citation omitted)).

IV.  Equal Protection

Stayrook claims that inmates in the state prison in Concord and inmates similarly classified in the NCF RU are not subjected

to the same restrictions.  Stayrook does not describe or specify what conditions are different for inmates in the Concord facility, but the court can infer from Stayrook's assertions that he is alleging that the conditions in the RU were more restrictive than those at the Concord prison.

The equal protection clause of the Fourteenth Amendment requires "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (quoting Tapalian v. Tusino, 377 F.3d 1, 5 (1st Cir. 2004)).  To prove an equal protection claim, a plaintiff must demonstrate that, as compared to others similarly situated, the plaintiff was treated differently based on an improper consideration.  See Kuperman, 645 F.3d at 78.  "Equal protection does not, however, require prison staff to treat all inmate groups the same when differentiation is necessary to avoid a threat to prison security."  Id.

Stayrook's equal protection claim fails because he has not demonstrated that he was similarly situated to the inmates in Concord.  The prisons in Concord and at NCF are different facilities with different physical layouts.  The ability to allow inmates with protective custody issues to safely recreate outdoors and exercise out of their cells, according to

Stayrook's allegations, are not the same in each facility. Stayrook, in his pleadings, has specifically asserted that the physical plant at NCF underlay the inability to provide him safe outdoor recreation. During his stay in RU, Stayrook was told that his out-of-cell time would have to take place in a "dry tank," which is a cell without furniture or fixtures. Stayrook has alleged that inmates in the Secure Housing Unit, the Concord prison's unit with security needs comparable to RU, are afforded time in a dayroom and an outdoor recreation area.[2]

Stayrook has thus failed to allege facts to allow the court to find that he is similarly situated to the Concord inmates in all relevant respects. Without such a showing, Stayrook has failed to state an equal protection claim. See Berrios-Romero v. Estado Libre Asociado de P.R., 641 F.3d 24, 27 (1st Cir. 2011) (inmate asserting equal protection claim must plead facts to give substance to his claim that he is similarly situated to others).

---

[2] Stayrook alleges that, unlike the Concord prison, NCF did not have any dayroom or outside recreation area for RU inmates to recreate during the two weeks Stayrook was in RU. Stayrook states that NCF has, since his stay in RU, begun to make changes to the facility to create a dayroom and an outside yard that will be able to accommodate RU inmates.

V.   Law Library

Stayrook complains that he was denied access to the law library at NCF, and that as a result, he was unable to assist his attorney in his criminal case, which caused him to lose his liberty.  Pretrial detainees do not, in general, have a freestanding right to law library access or trained legal assistance.  See Lewis v. Casey, 518 U.S. 343, 351 (1996).  Rather, they have a constitutional right to access the courts, which affords them access to the tools necessary to challenge their criminal cases, convictions, and sentences directly or collaterally, to file habeas petitions, or to challenge the conditions of their confinement through civil rights actions.  See id. at 355.

To prevail on a claim alleging a denial of access to the courts, the plaintiff must demonstrate that the available legal resources, including the law library and other sources of legal information, taken as a whole, were inadequate to meet his need to conduct legal research.  See Bounds v. Smith, 430 U.S. 817, 832 (1977), overruled in part on other grounds by Lewis, 518 U.S. at 354.  Further, the plaintiff must plead that his legal status was harmed by the deprivation of adequate legal materials.  See Lewis, 518 U.S. at 351.

"[A] state can fully discharge its obligation to provide a prisoner with access to the courts by appointing counsel." Lindsey v. Shaffer, 411 F. App'x 466, 469 (3d Cir. 2011); see also Jones v. Armstrong, 367 F. App'x 256, 259 (2d Cir. 2010) (same). Because Stayrook had counsel to represent him in his criminal trial, the state was not obligated to provide him with law library access so that he could assist his attorney in his criminal case. Accordingly, Stayrook has not stated a claim that he was denied meaningful access to the courts.

VI. Prison Policy, Prison Regulations, and State Law

In the motion to amend (doc. no. 15), Stayrook again asserts, as he did in his original complaint, that his rights have been violated by prison officials' failure to follow DOC regulations and policies. As discussed by the court in the March 19 report and recommendation (doc. no. 13), an inmate has no freestanding constitutional right to have jail officials follow jail policies if the officials' actions are otherwise constitutional. See Querido v. Wall, C.A. No. 10-098 ML, 2010 WL 5558915, *3 (D.R.I. Dec. 8, 2010), report and recommendation adopted, 2011 WL 63503, *1 (D.R.I. Jan. 7, 2011). Accordingly, Stayrook can assert no claim based on the failure of prison officials to properly follow their own policies.

VII. <u>Due Process</u>

Stayrook alleges that Masse was improperly conducting hearings at NCF without having attained a sufficient rank, or otherwise obtained proper authority, to do so.  Stayrook states that Masse improperly "read major offenses" against Stayrook and held a classification board hearing concerning Stayrook, allegedly in an effort to force Stayrook to abandon his request for protective custody, and to move Stayrook to a more dangerous housing unit.

Stayrook does not allege that he was actually subjected to any unconstitutional condition of confinement, or that his rights were otherwise violated, as a result of Masse exercising authority improperly.  Stayrook's allegations in both the complaint and the motion to amend fail to state any claim against Masse upon which relief might be granted based on his alleged improper exercise of authority.

**Conclusion**

For the foregoing reasons, the court recommends that Stayrook's motion to amend the complaint (doc. no. 15) be denied as futile, as it fails to state any claim upon which relief might be granted and fails to render the claims in the original

complaint sufficient to proceed. Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to district court review; issues not preserved by such objection are precluded on appeal).

                                                                  _____
                                                                  Landya McCafferty
                                                                   United States Magistrate Judge

May 2, 2012

cc: Shawn Stayrook, pro se

LBM:jba